OPINION
{¶ 1} Herbert Armstrong was found guilty of domestic violence after a trial to the bench. The offense was a fourth degree felony due to Armstrong's prior conviction of the same offense. The court sentenced Armstrong to Community Control Sanctions, including a ninety-day jail sentence against which Armstrong received 103 days of jail time credit.
 {¶ 2} On appeal, Armstrong contends in his two assignments of error that the verdict was not supported by sufficient evidence and was against the manifest weight of the evidence.
 I. {¶ 3} The State's case in chief was as follows. The complainant, Jill Moyer, was married to Armstrong at the time of the alleged offense. According to Moyer, she had kicked Armstrong in the shin a couple of evenings before March 23, 2004, the evening of the alleged domestic violence. She said she kicked Armstrong to make him stop annoying her. Because the kick caused a blood clot that was life threatening to Armstrong due to a medical condition, Moyer urged Armstrong to seek medical attention which he refused to do. She prevailed upon the couple's pastor to come to their residence around the dinner hour on March 23 to counsel Armstrong to seek medical attention. After his arrival, the pastor and Armstrong argued. After the pastor left, Armstrong was quiet for a while but thereafter trashed the couple's apartment and assaulted Moyer. Moyer said Armstrong dragged her down a hall and into a bedroom by her hair and robe and threw her to the floor, causing bruising on her left side. He then pinned her to the floor with his body weight and punched her several times ("About seven, ten.") in the back of her head with his right fist, knocking the front of her head into the carpet-covered cement floor. Moyer said that she felt sick from having her head struck, and that she lost the use of her right arm for about three weeks. After taking refuge with a neighbor for a few hours, Moyer returned to the couple's residence around 5:00 a.m. on the 24th and slept on the couch. Later she attempted to take a bus to the hospital, but en route stopped at Trish's Restaurant where she ordered pizza and a beer. She was too sick to eat or drink anything and almost passed out in the restroom. With the assistance of Cathy Bond, the waitress at Trish's, she summoned an ambulance which took her to the hospital. Moyer didn't want to prosecute Armstrong and only contacted the police March 29 at the insistence of her mother, who believed she needed to have an incident report on file should she ever have to file for disability. Although Moyer participated in the hospital's detoxification program, she said her primary purpose for going to the hospital was treatment for her injuries.
 {¶ 4} Parts of Moyer's story were corroborated. Allen Enochs, the couple's next-door neighbor, said that after the dinner hour on March 23, he heard thumps and screams in the couple's apartment. Cathy Bond, the waitress at Trish's, testified that in the early afternoon of March 24, she observed Moyer looking sick and unable to eat the food or drink the beer she had ordered, and that an ambulance was called to take Moyer to the hospital. Juda Moyer, Moyer's mother, testified that she was summoned to the couple's residence March 29, that Moyer couldn't move her right arm, that she wanted a police report documenting her daughter's injuries for disability purposes, that she wrote the police report which Moyer dictated because Moyer couldn't write herself, and that she observed the bruising on her daughter's left side. Kevin Kern of the Union Police Department also testified that Moyer was favoring her right arm, that her mother wrote the police report for her, and that he observed bruises on Moyer's left hip.
 {¶ 5} Armstrong testified on his own behalf. He testified that Moyer's kicking his shin and the alleged assault on Moyer (which he denied) were part of the same incident, rather than two discrete incidents separated by two days, as Moyer had testified. Essentially, he testified that the couple was engaged in some playful roughhousing when Moyer kicked him in the shin and that his startled reaction was to push her, causing her to fall, which may have caused the bruising. He helped Moyer get back up "right away."
 II. {¶ 6} "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed. 1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372, 683 N.E.2d 1096, citingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 7} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 III. {¶ 8} In arguing that the State's evidence that he acted knowingly was insufficient, Armstrong points to his own testimony that his pushing Moyer was only his startled reaction to being kicked in the midst of playful roughhousing. The flaw in this argument is that it ignores Moyer's testimony as to how she came to be injured.
 {¶ 9} In arguing that the State's evidence of his causing or attempting to cause physical harm to Moyer was insufficient, Armstrong points to the fact that Moyer waited six days to report the alleged assault to the police, and that she could have sustained her injuries during her six-day stay in the hospital. Again, the flaw in this argument is that it ignores Moyer's testimony.
 {¶ 10} The first assignment is overruled.
 {¶ 11} In arguing that the guilty verdict was against the manifest weight of the evidence, Armstrong points to his own testimony that there was a single incident of playful roughhousing in the midst of which Moyer kicked him and, in response to which, he merely pushed Moyer away. Armstrong concedes, however, that Moyer testified that her kicking Armstrong and his assaulting her were two distinct incidents two days apart. Determining which version to credit was the province of the trial court and its crediting of Moyer's partly corroborated version was not against the manifest weight of the evidence.
 {¶ 12} Armstrong next argues that the judgment was against the weight of the evidence because the State introduced no medical reports or pictures of Moyer's injuries, the neighbor with whom Moyer said she took refuge was not revealed, Moyer was drinking and taking prescription drugs after her return from the hospital March 29, the "only report" showing injury was Officer Kern's "domestic violence chart" prepared March 29, and Armstrong and Moyer gave conflicting accounts of what happened.
 {¶ 13} While the State's case might have been stronger had there been none of these alleged evidentiary deficiencies, we are not persuaded that the verdict is against the manifest weight of the evidence because of them. Moyer told a coherent story that was corroborated in significant parts by her mother and by three impartial witnesses: Allen Enochs, Cathy Bond, and Officer Kern. We find no fault in the trial court's crediting Moyer's testimony and the second assignment is overruled.
 {¶ 14} The judgment will be affirmed.
GRADY, P.J. and WALTERS, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).